## WINGATE *v.* McNamar.

CONTRACT.—A, who was a contractor with the *United States* to carry a triweekly mail between certain points, employed B to carry the mails for him at a stipulated price for a term of years. The contract stipulated that if A should be removed as contractor before the expiration of the term, the contract should be discharged; and B on his part agreed that if the service should be either increased or decreased, his compensation should be increased or decreased in like proportion. The government changed the service to a daily one, and the price being too low, A refused to take the contract, and was discharged.

*Held,* that the agreement between A and B did not require the former to make any new contract with the government, and that he incurred no liability to B by refusing to do so.

APPEAL from the *Clay* Common Pleas.

FRAZER, C. J.—The instruction to the jury, which the appellant argues was erroneous, does not appear in the record in any manner known to the law. It is not embodied in a bill of exceptions, nor does it appear as the statute provides it may. 2 G. & H., §§ 324, 325, p. 198; *Newby* v. *Warren,* 24 Ind. 161. We cannot, therefore, consider this question thus sought to be presented. We cannot forbear remarking that a transcript so badly made up as this is, it is to be hoped will not again be filed in this court.

The suit was for the breach of a contract to carry, tri-

weekly, the *United States* mail upon a certain route.   *Wingate* had a contract therefor with the government, and employed *McNamar* and one *Christman*, who had assigned his interest to *McNamar*, to carry it for him for $175 per annum until *July* 1st, 1866.   The contract was in writing, and stipulated among other things, that "if said *Wingate* shall be removed as contractor, or otherwise become unavoidably incapacitated to hold said contract, previous to the expiration of these articles, then he shall be fully discharged from the further performance of the same; and said *Christman* and *McNamar* further agree that if the service on said route be increased or decreased by the *United States* during the continuance of these articles, they will be governed in all respects by the same, and receive for their services a sum in proportion to the amount, and in the manner heretofore specified."

This contract commenced on the 3d of *August*, 1863.   In *October*, 1864, the postmaster refused to deliver the mail to *Christman* and *McNamar*, under orders from one *Payton*, who thereafter carried it daily, under a contract with the government.   The service had been increased by the postmaster general to a daily one, and thereupon the defendant had surrendered his contract, the postmaster general notifying him that he must perform the daily service for $300 per annum, or surrender.   *Payton* then took the contract at $300, and the mails were no longer delivered to *Christman* and *McNamar*.

It is contended that these facts show the case provided for by the contract when *Wingate* should be discharged.   It seems to us, that the contract between the parties did not require *Wingate* to enter into any new contract with the government, so that he could enable *Christman* and *McNamar* to perform for him the increased service which the government subsequently thought proper to establish.   They bound themselves to perform such increased service at a proportional rate of compensation, but they left him at liberty to take or not to take a contract with the government for such

increased service, as he might elect. Upon that subject he was not bound. He declined the increased service for $300 per annum, being $50 less than he would have been compelled to pay them. This, we think, he was at liberty to do under the contract. He was consequently removed as contractor, and upon that event it was expressly agreed that he should be discharged from the further performance of his agreement with *Christman* and *McNamar*. This being our construction of the contract, it is plain that we must reverse the judgment for error in refusing a new trial, upon the ground that the verdict was against the evidence.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*D. E. Williamson* and *A. Daggy*, for appellant.

*J. L. Ketcham* and *J. L. Mitchell*, for appellee.